**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| WALLY RAMOS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ASBURY AUTOMOTIVE GROUP, INC.,<br><br>        Defendant. | Case No. |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Asbury Automotive Group, Inc. ("Defendant") files this Notice of Removal, in accordance with 28 U.S.C. §§ 1332, 1441, 1446, and 1453, to remove this action filed by Plaintiff Wally Ramos ("Plaintiff") from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 24-CA-003551, to the United States District Court for the Middle District of Florida, Tampa Division. In support of removal, Defendant states as follows:

## NATURE OF REMOVED ACTION

1. On May 1, 2024, Plaintiff filed their Class Action Complaint against Defendant (the "Circuit Court Action"). A true and correct copy of the

Class Action Complaint ("Complaint") in the Circuit Court Action is appended hereto as **Exhibit A**.

2.      Plaintiff alleges that he "brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII") of Plaintiff and thousands of Class members, including, without limitation: names, addresses, dates of birth, Social Security numbers, loan numbers, financial and bank account information." (Ex. A ¶ 1.)  Plaintiff alleges that "[o]n or around December 25, 2023, an intruder gained entry to Defendant's database, accessed Plaintiff's and the Class members' PII, and exfiltrated information from Defendant's systems" (the "Incident"). (*Id.* ¶ 4.) Plaintiff alleges that he was notified on or around April 22, 2024. (*Id.* ¶ 5.)

3.      Plaintiff seeks to certify a class of "'[a]ll persons whose PII was accessed and/or exfiltrated during the . . . Incident." (*Id.* ¶ 80.)

4.       Plaintiff purports to bring "this action on behalf of all persons whose PII was compromised because of Defendant's failure to: (i) adequately protect their PII; (ii) warn of Defendant's inadequate information security practices; and (iii) effectively secure equipment and the database containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence." (*Id.* ¶ 10.)

5.      Plaintiff alleges that, as a result of the Incident, he and putative class members "have suffered actual and imminent injuries as a direct result of the . . . Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' PII against theft and not allow access and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII, and, at the very least, are entitled to nominal damages." (*Id.* ¶ 11.)

6.      To redress these purported harms, Plaintiff asserts claims against Defendant for negligence and breach of fiduciary duty. (*Id.* ¶¶ 90-113.) Plaintiff

3

seeks damages and injunctive relief, including requiring Defendant to implement various security changes. (*Id.* ¶¶ 11-12, *Prayer for Relief.*)

7. A true and correct copy of the docket sheet for the Circuit Court Action is attached hereto as **Exhibit B**.

8. In accordance with 28 U.S.C. § 1446(a) and Local Rule 1.06(b), all process, pleadings, and orders that have been filed and served in the Circuit Court Action are attached to this Notice as **Exhibit C**.

<strong><u>TIMELINESS OF REMOVAL</u></strong>

9. Defendant was served with the Summons and Complaint on May 6, 2023. A true and correct copy of the filed Return of Service is attached hereto as **Exhibit C.**

10. This removal is timely because Defendant filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

<strong><u>PROPRIETY OF VENUE</u></strong>

11. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

4

## GROUNDS FOR REMOVAL

12.     This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441. First, removal is proper under § 1332(a)(1) based on diversity-of-citizenship jurisdiction. Second, removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

## DIVERSITY-OF-CITIZENSHIP JURISDICTION

13.     **Basis of Original Jurisdiction**. The Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1).  Section 1332(a)(1), i.e., "diversity-of-citizenship" jurisdiction, "gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332(a)(1)). For the reasons set forth below, under 28 U.S.C. § 1332(a)(1) and § 1441(a), Defendant may remove the Circuit Court Action to this Court in accordance with "diversity-of-citizenship" jurisdiction because (1) this is a civil action between citizens of different states; (2) none of the properly joined and served defendants is a citizen of the forum state; and (3) the amount in controversy is more than $75,000. *See Duncan v. Exxon Mobile Corp.*, 968 F. Supp. 2d 996, 998 (E.D. Ark. 2013) (citing 28 U.S.C. §§ 1332, 1441, 1446).

14.     **<u>Defendant and Plaintiff Are Citizens of Different State</u>**s. Diversity-of-citizenship jurisdiction requires "complete diversity" of citizenship of the litigants; "every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted). Further, in the context of a class action suit, the citizenship of nonnamed class members is not considered (and therefore cannot defeat) complete diversity pursuant to Section 1332(a*). See Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002).

15.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business". 28 U.S.C. § 1332(c)(l).

16.     Plaintiff alleges that he is a citizen of Florida, residing in Hillsborough.  (Ex. A. ¶ 13.)

17.     As plead, "Defendant is, at all times relevant hereto was, a foreign corporation". [1]  (*Id.* ¶ 23.)

18.     Thus, because Defendant is a citizen of Georgia and Delaware, and Plaintiff is a citizen of Florida, complete diversity exists because no defendant is a citizen of the same state as any named Plaintiff. Accordingly, the first

---

[1] Defendant is a Delaware corporation with its principal place of business in Duluth, Georgia.

diversity-of-citizenship element is satisfied. *See Duncan*, 968 F. Supp. 2d at 998 (stating that the parties in the civil action must be citizens of different states in order for diversity-of-citizenship to be satisfied).

19. **Defendant Is Not A Citizen of Florida, the Forum State**. The second diversity-of-citizenship element provides that for the case to be properly removed, "no defendant can be a citizen of the state in which the action was brought." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001), certified question answered sub nom. *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28 (Ala. 2003) (citing 28 U.S.C. § 1441(b)). The second element here is satisfied because Defendant—the only defendant in the Circuit Court Action—is not a citizen of Florida, the forum state. Thus, the second diversity-of-citizenship element is also satisfied.

20. **The Amount in Controversy Exceeds $75,000**.[2] "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $75,000 or $5,000,000 amount-in-controversy thresholds (for diversity-of-citizenship jurisdiction and/or CAFA jurisdiction, respectively), and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim that they are entitled to damages in any amount. Defendant denies liability, denies Plaintiff and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

21.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553.     In determining whether the amount in controversy is satisfied, the Court may consider compensatory and statutory damages, as well as punitive damages. *See Holley Equip. Co. v. Credit All. Corp.*, 821 F .2d 1531, 1535 (11th Cir. 1987).

22.     Moreover, in the Eleventh Circuit, "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citation omitted).

23.     Where, as here, the Complaint does not establish a specific amount-in-controversy, "it may be facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum". *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation and internal quotation marks omitted).  District courts should not "suspend reality or shelve common sense" in determining whether the amount-in-controversy is

8

satisfied. *Id.* at 1062 (quotation marks omitted). Instead, courts should "use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* (footnote omitted). "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014) (citation omitted).

24.    **<u>Legal Claims for Damages</u>**.  Plaintiff in this action brings claims on behalf of himself and putative class members for negligence and breach of fiduciary duty. (Ex. A ¶¶ 90-113.) Plaintiff seeks damages and injunctive and other equitable relief.  (*See id.* ¶¶ 12, *Prayer for Relief*.)

25.    Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages he allegedly sustained as a result of Defendant's alleged wrongful conduct. Nevertheless, Plaintiff's requested relief supports a finding that the amount in controversy exceeds the $75,000 amount-in-controversy threshold. For example, even if not specifically requested in his Complaint, Plaintiff could still recover any and all damages under Florida law to which he is legally entitled, including potentially "general damages" such as compensatory damages, and/or "punitive damages" if he is successful on his claims.

26.    Plaintiff seeks injunctive and declaratory relief such as requiring changes to Defendant's cybersecurity practices, including, not limited to,

"requiring Defendant to implement and maintain a comprehensive Information Security Program" and "requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and . . . for a period of 10 years, appointing a qualified and independent third party assessor to conduct attestation on an annual basis". (Ex. A, *Prayer for Relief*.)  These purported costs must be considered in determining the amount-in-controversy.  *See Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1344 (11th Cir. 2018) (stating the "immediate financial consequences of the litigation" may be considered in calculating the amount in controversy) (citation and emphasis omitted); *Adams v. Am. Fam. Mut. Ins. Co.*, 981 F. Supp. 2d 837, 847-48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants.") (emphasis in original).

27.    Further, Plaintiff seeks an award of damages on behalf of himself and the putative class for claims for negligence and breach of fiduciary duty. (Ex. A. ¶¶ 90-113.)  For these claims, she seeks "actual, consequential, and nominal damages".  (*Id.*  ¶¶ 103, 113.)  These claims do not support or suggest the amount in economic or non-economic damages that Plaintiff seeks, especially given that Plaintiff does not allege he or anyone else in the class

suffered fraud, attempted fraud, or theft as a result of the Incident. However, potential actual and compensatory damages could exceed the amount-in-controversy minimum. Combined with Plaintiff's other damages, Defendant can demonstrate by a preponderance of the evidence that the diversity jurisdiction amount-in-controversy threshold has been met. *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas v. FIA Card Servs., Nat'l Assoc.*, No. 5:14-CV-79, 2014 WL 4954389, at *3 (N.D. W. Va. Oct. 2, 2014) (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted).

28.     Based on the above, the cost of injunctive relief and declaratory relief, combined with Plaintiff's potential to recover general damages, demonstrate that the amount in controversy exceeds the $75,000 threshold for diversity-of-citizenship jurisdiction.

29.     Accordingly, Defendant may remove the Circuit Court Action to this Court under "diversity-of-citizenship" jurisdiction because (1) diversity of citizenship exists between the parties; (2) Defendant is not a citizen of Florida, the forum state; and (3) the amount in controversy is more than $75,000.

## CAFA JURISIDICTION

30.    **Basis of Original Jurisdiction**.  This Court also has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 924-25 (11th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 88).

31.    There is no presumption against removal under CAFA. *Id.; see also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (holding that "[a]pplying this binding precedent from the Supreme Court [in *Dart Cherokee*], we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions"). In deciding whether removal is proper, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 924-25.

32.    Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)-(2)(A); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

33.    As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Defendant may remove the Circuit Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs. *See Lowery*, 483 F.3d at 1194.

34.    **This Action Is Pled as a Class Action.**  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1).

35.    Plaintiff brings this action as a "class action" and seeks class certification under Florida law pursuant to Florida Rules of Civil Procedure 1.220(b)(2) and (b)(3).  (Ex. A ¶ 80.)  Because Florida Rule 1.220 is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the first CAFA element is satisfied. 28 U.S.C. § 1332(d)(1); *see Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23."); *accord Rollins, Inc. v. Butland*, 951

So. 2d 860, 879 (Fla. Dist. Ct. App. 2006) (explaining that "federal cases are persuasive authority for the interpretation of rule 1.220" because it is similar to Federal Rule 23).

36.     **The Putative Class Includes At Least 100 Members.**  Plaintiff purports to bring this action on behalf of herself and all others similarly situated, including "[a]ll persons whose PII was accessed and/or exfiltrated during the Data Breach Incident."  (Ex. A ¶ 80.)

37.     Plaintiff asserts that the Incident "has impacted several thousand persons. The members of the class, therefore, are believed to be so numerous that joinder of all members is impracticable."  (*Id.* ¶ 82.)

38.     Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

39.     **"Minimal Diversity" of Citizenship Exists.**  Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class is a citizen of a State different from any defendant."  *See also Dart Cherokee*, 574 U.S. at 84-85.

40.     **Defendant's Citizenship.**  As alleged in the Complaint, Defendant is a foreign corporation[3], with its principal place of business in Duluth, Georgia. Therefore, Defendant is a Georgia and Delaware citizen for

---

[3] Defendant is a corporation organized under the laws of the state of Delaware.

diversity purposes. (*See* Ex. A ¶ 21.) Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

43. **Plaintiff's and Putative Class Members' Citizenship**.  To be a "citizen" of a state, the individual must not only reside in that state, but he or she also must "inten[d] to remain in that state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021). In other words, "[o]ne's domicile is 'the place of his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *Id.* at 1149 (citation omitted). "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.* (citations omitted).

42. Plaintiff alleges that he is a citizen and resident of Hillsborough County, Florida.  (Ex. A. ¶ 13.)

43. As such, because Plaintiff and Defendant are citizens of different states, minimal diversity is met.

15

44.     Further, the putative class Plaintiff seeks to represent is broad and expansive geographically. After determining whose information could have potentially been impacted by the Incident, Defendant mailed notifications of the Incident to individuals with addresses in all 50 states.

45.     While "residency does not equate to citizenship," *Smith*, 991 F.3d at 1157, in this case, where only one putative class member must reside and intend to remain in a state different than Florida, it is more likely than not that at least one of the approximately several thousands of remaining putative class members is a non-Florida citizen. *See, e.g., Fuller v. Home Depot Servs., LLC*, No. CIV.A.1:07CV1268 RLV, 2007 WL 2345257, at *3 (N.D. Ga. Aug. 14, 2007) (nine putative class members with out-of-state driver's licenses and billing addresses was sufficient to show domicile outside of Georgia to satisfy minimal diversity under CAFA); *Brew v. Univ. Healthcare Sys., LC*, CV 15-4569, 2015 WL 8259583, at *3 (E.D. La. Dec. 9, 2015) (minimal diversity existed where members of the class definition had mailing addresses in seventeen different states).

46.     Accordingly, "minimal diversity" of citizenship exists for purposes of CAFA jurisdiction because Plaintiff and members of the proposed class are citizens of a state different than the state of citizenship of Defendant.

16

47.    **The Amount in Controversy Exceeds the CAFA Threshold.**[4]

CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6).

48.    Moreover, in the Eleventh Circuit, "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison*, 228 F.3d at 1268 (citation omitted). The court "aggregate[s] the claims of individual class members and consider[s] the monetary value that would flow to the entire class if … relief were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(6)).

49.    The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-

---

[4] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $75,000 or $5,000,000 amount-in-controversy thresholds (for diversity-of-citizenship jurisdiction and/or CAFA jurisdiction, respectively), and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim that they are entitled to damages in any amount. Defendant denies liability, denies Plaintiff and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

controversy requirement. *Dart Cherokee*, 574 U.S. at 89; *accord Anderson*, 943 F.3d at 925. "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *McDaniel*, 568 F. App'x at 732.

50.    Where a plaintiff does not plead a specific amount of damages, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). In determining whether the amount-in-controversy requirement is satisfied, the Court may consider various pieces of evidence, including "facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence." *Id.* at 754.

51.    "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751.  Indeed, as the Eleventh Circuit has recognized, "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'" *Id.* (emphasis in original; citation omitted).

52.    Plaintiff in this action brings claims on behalf of himself and putative class members for negligence and breach of fiduciary duty. (Ex. A

18

¶¶ 90-113.) Plaintiff seeks damages and injunctive and other equitable relief. (*See id.* ¶¶ 12, *Prayer for Relief.*)

53.    The Complaint does not specify the amount of damages Plaintiff and the putative class members seek in this action. But the pleaded allegations demonstrate that the putative class members' claims, in the aggregate, exceed the sum or value of $5 million, exclusive of interest and costs. According to the Complaint, there was a "significant volume of data on Defendant's network, potentially amounting to millions of individuals' detailed and confidential personal information" and a "significant number of individuals who would be harmed by the exposure of the unencrypted data." (Ex. A ¶ 65.) Assuming Defendant notified approximately 41,603 individuals of the Incident, and if Plaintiff alleges more than $50 in damages for each putative class member, the jurisdictional amount-in-controversy is easily satisfied. The allegations in the Complaint plainly meet this threshold.

54.    Plaintiff alleges that as a result of the Data Incident, he and putative class members face a "lifetime risk of identity theft", for which they must spend time attempting to mitigate. (*Id.* ¶¶ 6, 8, 11.) Among other alleged harms, Plaintiff alleges that Plaintiff and putative class members have suffered or will suffer "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use

of their PII" and "costs associated with placing freezes on bank accounts and credit reports." (*Id.* ¶¶ 100, 110.)

55.     Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, includes the costs to purchase credit monitoring and identity theft protection. (*Id.* ¶¶ 73, 76.)

56.     Three main identity-protection agencies—Equifax,[5] LifeLock,[6] and Experian[7]—advertise monthly rates for credit-monitoring services ranging from \$11.99 to \$24.99 per person per month. For example, LifeLock offers a product, titled LifeLock Standard, that provides 1-Bureau credit monitoring with up to \$25,000 in "stolen funds reimbursement" for \$11.99 per month. Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to \$1 million in identity theft insurance for \$16.95 and \$24.99 per month.

57.     Taking the LifeLock product (at \$11.99 per month), which costs \$143.88 annually, the costs for providing just one year of credit monitoring to approximately 41,603 individuals alleged to be in the putative class (as those

---

[5] *See* https://www.equifax.com/personal/products/credit/monitoring-product-comparison/(last visited May 16, 2024).
[6] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited May 16, 2024).
[7] *See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited May 16, 2024).

who were impacted by the Incident) would be $5,985,839.64, well exceeding the $5 million threshold.

58.     Indeed, in data incident cases involving similar allegations, and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKX), 2016 WL 4051265, 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12- cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same). Thus, the Complaint's request for damages for credit monitoring costs alone puts more than $5 million in controversy in this case.

59.     Further, Plaintiff seeks injunctive and declaratory relief related to requiring changes to Defendant's cybersecurity practices. These changes include, but are not limited, requiring Defendant "to implement and maintain

a comprehensive Information Security Program", "to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and . . . for a period of 10 years, [to] appoint[] a qualified and independent third party assessor to conduct attestation on an annual basis." (Ex. A, *Prayer for Relief*.) These purported costs must also be considered in determining the amount-in-controversy. *See Fastcase, Inc., LLC,* 907 F.3d at 1344 (stating the "immediate financial consequences of the litigation" may be considered in calculating the amount in controversy) (citation and emphasis omitted)*; Adams,* 981 F. Supp. 2d at 847-48 ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would logically flow* from the granting of the declaratory relief sought by the claimants. For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.") (emphasis in original).

60.    Finally, Plaintiff seeks an award of damages on behalf of himself and the putative class for claims for negligence and breach of fiduciary duty. (Ex. A. ¶¶ 90-113.) For these claims, he seeks "actual, consequential, and nominal damages, and injunctive relief" to be determined. (*Id.* ¶¶ 103, 113.) The potential to recover damages is also included within the amount-in-controversy. These claims do not support or suggest the amount in economic or

non-economic damages that Plaintiff seeks, especially given that Plaintiff does not allege he or anyone else in the class suffered fraud, attempted fraud, or theft as a result of the Incident. However, based on the minimum compensatory damages for credit monitoring costs calculated above, potential actual and compensatory damages awarded to the class here could also exceed the CAFA amount-in-controversy minimum. Combined with Plaintiff's other damages, Defendant can demonstrate by a preponderance of the evidence that the CAFA amount-in-controversy threshold has been met. *See, e.g., Lanier*, 256 F. App'x at 632 (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.") (quotation omitted); *see also, e.g., Thomas*, 2014 WL 4954389, at *3 (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted); *Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08–0384–CV–W–FJG, 2008 WL 3065009, *2 n.5 (W.D. Mo. July 30, 2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA.).

61. Thus, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of

CAFA are satisfied, Defendant has properly removed the Circuit Court Action to this Court.

## EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY

62. "Three enumerated exceptions to the exercise of CAFA jurisdiction exist[]: the 'local controversy' and 'home state controversy' are mandatory exceptions; whereas the 'interests of justice' exception is discretionary." *Brook v. UnitedHealth Group Inc.*, No. 06-cv-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (quoting 28 U.S.C. §§ 1332(d)(2)(4)(A)-(B)); *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1334-37 (11th Cir. 2017).

63. It is the party "seek[ing] to avail itself of an express statutory exception to federal jurisdiction granted under CAFA…[that] bears the burden of proof with regard to that exception." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006). "[O]nce the removing defendants have proved the amount in controversy and the minimal diversity requirement, and thus have established federal court jurisdiction under § 1332(d)(2)," *id.* at 1165, it is the "objecting party [that] bears the burden of proving an express statutory exception," like the local-controversy, home-state, or discretion exception. *Id* at 1164. *See also Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017). Plaintiff would not be able to meet this burden.

64. It is well-settled law that for either the mandatory local-controversy or the home-state exception to apply, two-thirds or more of the

putative class and the primary defendant must be citizens of the state in which the action was filed. *See* 28 U.S.C. §§ 1332(d)(4)(B) & (C). Here, Defendant is a foreign corporation with its principal place of business in Duluth, Georgia. (Ex. A. ¶ 21.) Thus, these exceptions do not apply.

65.     For the same reasons, the discretionary—sometimes referred to as the "interests of justice"—exception to CAFA jurisdiction does not apply here. The discretionary exception is codified under 28 U.S.C. § 1332(d)(3) and provides a district court with the discretion to decline jurisdiction where (1) "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" and (2) "the primary defendants are citizens of the State in which the action was originally filed" among other factors. Because Defendant is not a citizen of Florida, this exception does not apply.

66.     In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

## NOTICE

67.     As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

WHEREFORE, Defendant Asbury Automotive Group, Inc. removes the Circuit Court Action from the Circuit Court for the Thirteenth Judicial Circuit

in and for Hillsborough County, Florida, to the United States District Court for the Middle District of Florida.

Respectfully submitted, this 24th day of May, 2024.

By: /s/ *Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315
Email: jsingerbrady@bakerlaw.com
Secondary email: mrios@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida
Telephone: 407.649.4000
Facsimile: 407.841.0168


Christopher A. Wiech
*(Pro Hac Vice Forthcoming)*
cwiech@bakerlaw.com
Chelsea M. Lamb
*(Pro Hac Vice Forthcoming)*
clamb@bakerlaw.com
Olivia S. Williams
*(Pro Hac Vice Forthcoming)*
owilliams@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309
Telephone: 404.459.0050
Fax: 404.459.5734

*Attorneys for Defendant*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused a true and correct copy of the foregoing **Defendant's Notice of Removal** to be electronically filed with the Court using CM/ECF and electronic mail to counsel of record for Plaintiff, addressed as follows:

Manuel S. Hiraldo
**HIRALDO P.A.**
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713
mhiraldo@hiraldolaw.com

Jibrael S. Hindi, Esq.
**THE LAW OFFICES OF
JIBRAEL S. HINDI**
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
Telephone: 844.542.7235
Jibrael@jibraellaw.com

This 24th day of May, 2024.

*/s/ Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315

27