

Exhibit A

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

### CASE NO.

WALLY RAMOS, individually and
on behalf of all others similarly situated,

**CLASS REPRESENTATION**

Plaintiff,

**JURY TRIAL DEMANDED**

v.

ASBURY AUTOMOTIVE GROUP, INC.,

Defendant.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Wally Ramos brings this class action against Defendant Asbury Automotive Group, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII") of Plaintiff and thousands of Class members, including, without limitation: names, addresses, dates of birth, Social Security numbers, loan numbers, financial and bank account information.

2.      During the course of operating its automotive sales business, Defendant was entrusted with an extensive amount of Plaintiff's and the Class members' PII.

3.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed nondelegable legal and equitable duties to Plaintiff and the Class members.

1

4.      On or around December 25, 2023, an intruder gained entry to Defendant's database, accessed Plaintiff's and the Class members' PII, and exfiltrated information from Defendant's systems (the "Data Breach Incident").

5.      Defendant did not notify Plaintiff and the Class Members of the incident until April 22, 2024. During this period of four months, Defendant deprived Plaintiff and the Class Members of their right to take active measures to protect their PII.

6.      Plaintiff's and the Class members' PII that was acquired in the Data Breach Incident can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. The permanent loss of their Social Security numbers and other PII exposes Plaintiff and Class Members to an ongoing, lifetime risk of identity theft.

7.      Plaintiff's and the Class members' PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect Plaintiff's and the Class members' PII.

8.      Until notified of the Data Breach Incident, Plaintiff and Class Members had no idea their PII had been stolen, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

9.      Defendant disregarded the rights of Plaintiff and the Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure their PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party.

2

10.    Plaintiff brings this action on behalf of all persons whose PII was compromised because of Defendant's failure to: (i) adequately protect their PII; (ii) warn of Defendant's inadequate information security practices; and (iii) effectively secure equipment and the database containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence.

11.    Plaintiff and Class members have suffered actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' PII against theft and not allow access and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII, and, at the very least, are entitled to nominal damages.

12.    Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

3

## **PARTIES**

13.     Plaintiff is, and at all times relevant hereto was, a citizen and resident of Hillsborough County, Florida.

14.     Plaintiff greatly values his privacy and PII. Prior to the Data Breach, Plaintiff took reasonable steps to maintain the confidentiality of his PII.

15.     Plaintiff is very careful about sharing his PII. He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

16.     Plaintiff received a letter dated April 22, from Defendant concerning the Data Breach Incident. The letter stated that unauthorized actors gained access to files on Defendant's network. The compromised files contained Plaintiff's name, address, loan number, Social Security number.

17.     Recognizing the present, immediate, and substantially increased risk of harm Plaintiff faces, Defendant offered him a one-year subscription to a credit monitoring service. Plaintiff has not signed up for the program as he does not trust Defendant's chosen vendor with his PII. Additionally, Plaintiff does not believe this is sufficient to protect his identity from the ongoing risks of theft he faces.

18.     Since learning of the Data Breach, Plaintiff has spent additional time reviewing his bank statements, credit cards, and reviewing his emails for fraud alerts.

19.     Plaintiff plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his depository, credit, and other accounts for any unauthorized activity. Indeed, Defendant's notice directs Plaintiff to take these steps.

20.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

21.     Defendant is, and at all times relevant hereto was, a foreign corporation that conducts various businesses throughout the state of Florida. Defendant may served through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301-2525.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

23.     This Court has personal jurisdiction over Defendant under Florida Stat. § 48.193, because Defendant personally or through its agents operated, conducted, engaged in, or carried on a business or business venture in Florida; had offices in Florida; committed tortious acts in Florida; and/or breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

24.     Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because the cause of action accrued in this County.

## FACTS

25.     On or around December 25, 2023, an intruder gained unauthorized access to Defendant's database.

26.     On or about April 22, 2024, Defendant emailed Plaintiff and the Class members a form notice attempting to minimize the Data Breach Event, while admitting that sensitive PII had been compromised and stolen.

27.     Contrary to the self-serving narrative in Defendant's form notice, Plaintiff's and Class members' unencrypted information may end up for sale on the dark web and/or fall into the hands of companies that will use the detailed PII for targeted marketing without the approval.

5

28.     At the time of the Data Breach Incident, Defendant maintained Plaintiff's and the Class members PII in its database and systems.

29.     By obtaining, collecting, and storing Plaintiff's and Class members' PII, Defendant assumed nondelegable legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

30.     Sophisticated companies like Defendant are aware of the different types of threat actors operating across the internet and the types of criminal acts that cyber thieves employ for profit. Accordingly, it is imperative that Defendant guard against those criminal exploits.

31.     Plaintiff and Class members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

32.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class members' PII from involuntary disclosure to third parties.

33.     Prior to the Data Breach Incident, Defendant should have (i) encrypted or tokenized the sensitive PII of Plaintiff and the Class members, (ii) deleted such PII that it no longer had reason to maintain, (iii) eliminated the potential accessibility of the PII from the internet and its website where such accessibility was not justified, and (iv) otherwise reviewed and improved the security of its network system that contained the PII.

34.     Prior to the Data Breach Incident, on information and belief, Defendant did not (i) encrypt or tokenize the sensitive PII of Plaintiff and the Class members, (ii) delete such PII that it no longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the internet and its website where such accessibility was not justified, and (iv) otherwise review and improve the security of its network system that contained the PII.

6

35.     Contrary to industry-standard practices, Defendant failed to encrypt Plaintiff's and Class Members' PII, failed to delete it after it no longer needed to be retained, stored it in a vulnerable, internet-accessible environment, failed to monitor and detect its movement from Defendant's network to the internet in real time, and failed to monitor or audit the practices of Defendant's cybersecurity vendors, if any. Had Defendant implemented such expected measures, the Data Breach Incident could have been prevented or mitigated.

36.     Defendant also failed to monitor or audit the cybersecurity practices of its cybersecurity vendors, continued to accept and store PII even after it knew or should have known of the Data Breach Incident, and unreasonably delayed in providing notice of the Data Breach Incident to Plaintiff and Class Members, who were consequently prevented from taking timely self-protection measures.

37.     Defendant did not use reasonable security procedures and practices suitable or adequate to protect the sensitive, unencrypted information they were maintaining for consumers.

38.     Defendant's security failures also demonstrate that it failed to honor it express and implied promises to Plaintiff and the Class Members, including by failing to:

(a) maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

(b) adequately protect patients' PII from unauthorized disclosure;

(c) implement policies and procedures to prevent, detect, contain, and correct security violations;

(d) implement procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports;

(e) protect against any reasonably anticipated threats or hazards to the security or integrity of PII; and

7

(f) effectively train all members of its workforce on the policies and procedures with respect to PII as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PII.

39. Had Defendant implemented such data security protocols, the consequences of the Data Breach Incident could have been avoided, or at least significantly reduced (inasmuch as the exposure could have been detected earlier); the amount of PII compromised could have been greatly reduced; and affected consumers could have been notified—and taken self-protection and mitigating actions—much sooner.

40. Until notified of the Data Breach, Plaintiff and Class Members had no idea that their PII had been compromised and that they were—and will continue indefinitely to be—at significant risk of identity theft and other forms of personal, social, and financial harm.

41. Plaintiff and the Class members have taken reasonable steps to maintain the confidentiality of their PII, relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

42. Defendant could have prevented the Data Breach Incident by properly securing and encrypting Plaintiff's and Class members' PII, or Defendant could have destroyed the data, especially old data from former inquiries and/or customers that Defendant had no legal right or responsibility to retain.

43. Defendant's negligence in safeguarding Plaintiff's and the Class members' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

44. Defendant is a sophisticated business that knew or should have known that PII – especially Social Security numbers – is an invaluable commodity and a frequent target of hackers.

45.     There were a record 1,802 data breaches in 2022, and 1,862 data breaches in 2021, surpassing 2020's total of 1,108 and the previous record of 1,506 set in 2017.

46.     Further, there have been many recent high profile data breaches of other industry leading companies, including Microsoft (250 million records; December 2019), Wattpad (268 million records; June 2020), Facebook (267 million users; April 2020), Estee Lauder (440 million records; January 2020), Whisper (900 million records; March 2020), and Advanced Info Service (8.3 billion records; May 2020).

47.     Defendant knew or should have known that its electronic records, containing sensitive financial and personal information, among other valuable personal information, would be and/or had been targeted by cybercriminals.

48.     Defendant was aware of prior data breaches affecting various industries.

49.     PII is valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200. Anita George, *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs*, Digital Trends (Oct. 16, 2019) https://www.digitaltrends.com/computing/personal-data-sold-onthe-dark-web-how-much-it-costs/. Criminals also can purchase access to entire sets of information obtained from company data breaches from $900 to $4,500. *In the Dark, VPNOverview*, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/.

50.     Social Security numbers are among the most sensitive kind of personal information that is subject to hacking and theft because they may be put to a variety of fraudulent uses and are extremely difficult for an individual to change. The Social Security Administration stresses that the loss of an

9

individual's Social Security number, as is the case here, can lead to identity theft and extensive financial

fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.

Social Security Administration, *Identity Theft and Your Social Security Number*, July 2021,

https://www.ssa.gov/pubs/EN-05-10064.pdf.

51.    What is more, it is no easy task to change or cancel a stolen Social Security number. An

individual cannot obtain a new Social Security number without significant paperwork and evidence of

actual misuse. In other words, preventive action to defend against potential misuse of a Social Security

number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a

new number.

52.    Even then, a new Social Security number may not be effective. According to Julie

Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new

number very quickly to the old number, so all of that old bad information is quickly inherited into the

new Social Security number."  Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard*

*to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-

anthem-s-hackers-has-millionsworrying-about-identity-theft.

53.    The information compromised in the Data Breach Incident is significantly more

valuable than the loss of, for example, credit card information in a retailer data breach because, in that

situation, victims can cancel or close credit and debit card accounts. The information compromised in

this Data Breach Incident is impossible to "close" and difficult, if not impossible, to change: names, dates of birth, financial history, and Social Security numbers.

54.     This data commands a much higher price on the black market than other PII. Martin Walter, senior director at cybersecurity firm RedSeal, Inc., explained "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x in price on the black market." Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, NETWORKWORLD (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

55.     The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. Among other forms of fraud, identity thieves armed with fraudulently obtained Social Security numbers may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

56.     Despite the prevalence of public announcements and knowledge of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the Class members from being compromised.

57.     The ramifications of Defendant's failure to keep secure Plaintiff's and the Class members' PII are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

58.     According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result,

studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

United States Government Accountability Office, Report to Congressional Requesters, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf

59.    The PII of Plaintiff and the Class Members was stolen to engage in identity theft and/or to sell it to criminals who will purchase the PII for that purpose.

60.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.

61.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Plaintiff's and the Class members' PII, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and the Class members as a result of a breach.

62.    Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

63.    Indeed, in its notice of regarding the incident, Defendant recognized that each victim now faces a present and continuing risk of identity theft and fraud, offering Plaintiff and Class Members limited identity theft protection. Despite the risk that will remain for the lives of Plaintiff and Class Members, Defendant only offered identity protection services for one year. These services offered by Defendant are woefully insufficient to protect Plaintiff and Class Members from the lifelong ramifications of having their highly confidential PII accessed, acquired, exfiltrated, and/or published on the internet.

12

64.     Making matters worse, Defendant advised Plaintiff and the Class Members that they need to spend their own time and money mitigating the fallout from the Data Breach Incident. In other words, Defendant wants Plaintiff and the Class Members to bear the burden for its negligence.

65.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed and confidential personal information and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

66.     The injuries to Plaintiff and the Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Plaintiff's and the Class members' PII.

67.     Plaintiff has suffered and will continue to suffer injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and criminals.

68.     The exposed PII of Plaintiff and Class Members can be and in certain cases has already been sold to other identity thieves or on the dark web—a hidden network of black-market websites that serves as a "haven for all kinds of illicit activity (including the trafficking of stolen personal information captured through means such as data breaches or hacks)." Ellen Sirull, Paid Content: What is the dark web? FOX NEWS (Mar. 27, 2018), https://www.foxnews.com/tech/paid-content-what-is-the-dark-web. Cyber criminals now can indefinitely access, offer for sale, and use the unencrypted, unredacted PII of Plaintiff and Class Members for nefarious ends.

69.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

13

70.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

71.    Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans and accounts opened in their names, fraudulent charges, tax return fraud, utility bills opened in their names, and similar identity theft.

72.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

73.    Plaintiff and Class Members are also incurring, and may continue incurring for the remainder of their lifetimes, out-of-pocket costs for protective measures such as identity theft protection and credit monitoring fees (for any credit monitoring obtained in addition to or in lieu of the inadequate monitoring offered by Defendant), credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach Incident.

74.    Plaintiff and Class Members also suffered damage to or depreciation of their PII when it was acquired by the cyber thieves in the Data Breach Incident.

75.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and other accounts and records for misuse. Defendant's own notice of data breach instructs Plaintiff and Class Members regarding the time that they will need to spend monitoring their own accounts and statements.

76.    Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach Incident. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach Incident relating to:

14

(a) Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

(b) Purchasing credit monitoring and identity theft prevention;

(c) Placing "freezes" and "alerts" with credit reporting agencies;

(d) Spending time on the phone with or at a financial institution or government agency to dispute fraudulent charges and/or claims;

(e) Contacting financial institutions and closing or modifying financial accounts; and

(f) Closely reviewing and monitoring medical insurance accounts, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

77. Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

78. Plaintiff has experienced and continues to experience mental anguish and stress related to the disclosure of her PII, the invasion of his privacy, and the threats of identity theft that he will continue to endure for years.

79. As a direct and proximate result of Defendant's actions and inaction, Plaintiff and Class Members have suffered a loss of privacy and face a substantial and present risk of harm.

15

## CLASS ALLEGATIONS

### PROPOSED CLASS

80.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and on

behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure

1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is defined as:

> **All persons whose PII was accessed and/or exfiltrated during the
> Data Breach Incident.**

81.     Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

82.     The Data Breach Incident has impacted several thousand persons. The members of the

Class, therefore, are so numerous that joinder of all members is impracticable.

83.     Identification of the Class members is a matter capable of ministerial determination

from Defendant's records.

### COMMON QUESTIONS OF LAW AND FACT

84.     There are numerous questions of law and fact common to the Class which predominate

over any questions affecting only individual members of the Class. Among the questions of law and

fact common to the Class are: [1] Whether and to what extent Defendant had a duty to protect the PII

Plaintiff and Class members; [2] Whether Defendant failed to adequately safeguard the PII of Plaintiff

and Class Members; [3] When Defendant actually learned of the Data Incident; [4] Whether Defendant

adequately, promptly, and accurately informed Plaintiff and Class members that their PII had been

compromised; [4] Whether Defendant failed to implement and maintain reasonable security procedures

and practices appropriate to the nature and scope of the information compromised in the Data Breach

Incident; [5] Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the

Data Breach Incident to occur; [6] Whether Plaintiff and the Class Members are entitled to actual,

16

consequential, and/or nominal damages as a result of Defendant's wrongful conduct; [7] Whether Plaintiff and the Class members are entitled to restitution as a result of Defendant's wrongful conduct; and [8] Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach Incident.

85.     The common questions in this case are capable of having common answers.   Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

86.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

87.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

88.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

17

89.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

90.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-89 as if fully set forth herein.

### Foreseeability

91.     Prior to the Data Breach Incident, each Defendant knew or should have known that threat attackers were targeting healthcare providers such as Defendant in an effort to obtain personally identifiable information and misuse it to commit fraud and identity theft, particularly when stored in an internet-accessible environment, in at least the following respects:

    (a) Defendant was aware of previous data breaches that had targeted banks and lenders, including breaches that affected information of their competitors;

    (b) Hackers are known to routinely attempt to steal such information and use it for nefarious purposes; and

    (c) Publicly available industry warnings regarding threat attackers' efforts to obtain such information for ransom or misuse were widely and readily available to Defendant.

### Duty, Breach, and Causation

92.     Prior to the Data Breach, Defendant knowingly and intentionally acquired the PII of Plaintiff and Class Members.

93.     In knowingly and intentionally acquiring the PII of Plaintiff and Class Members, Defendant assumed a duty to use reasonable care, including implementing reasonable security practices and procedures, to safeguard the PII of Plaintiff and Class Members against unauthorized access, acquisition, and misuse.

94.     Defendant failed to use reasonable care by storing the PII of Plaintiff and Class Members in an internet-accessible environment under the following circumstances:

(a)  The PII of Plaintiff and Class Members was not encrypted.

(b)  The PII of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, including the PII of Plaintiff and Class Members with whom Defendant had not had a relationship for years, was not removed from Defendant's network.

(c)  The movement of the PII of Plaintiff and Class Members from Defendant's network to the internet was not monitored and detected in real time.

95.     Under like circumstances, a reasonably careful person would have done the following:

(a)  Encrypted the PII.

(b)  Removed from Defendant's network the PII that Defendant had no reasonable need to store in an internet-accessible environment, including the PII of individuals with whom Defendant had not had a relationship for years.

(c)  Monitored and detected in real time the movement of the PII from the network to the internet.

(d)  Maintained an adequate data security system to reduce the risk of data breaches and cyber attacks.

19

(e) Implemented policies and procedures to prevent, detect, contain, and correct security violations.

(f) Implemented procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports.

(g) Effectively trained all members of its workforce on the policies and procedures with respect to PII as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of PII.

96.    By failing to take the above security measures, Defendant breached duties to Plaintiff and the Class Members.

97.    Defendant's negligence directly and in natural and continuous sequence produced or contributed substantially to producing Plaintiff's and Class Members' damages because of the following:

(a) Defendant's failure to encrypt the PII of Plaintiff and Class Members allowed the threat attacker to acquire their PII.

(b) Defendant's failure to remove from its network the PII of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, including the PII of Plaintiff and Class Members with whom Defendant had not had a relationship for years, allowed the threat attacker to acquire their PII.

(c) Defendant's failure to monitor in real time the movement of the PII of Plaintiff and Class Members from Defendant's network to the internet allowed the threat attacker to exfiltrate the PII without detection and therefore without any attempt to halt the exfiltration before its completion.

98.     But for Defendant's negligence, the damage to Plaintiff and Class Members would not have occurred because of the following:

(a) If Defendant had encrypted the PII of Plaintiff and Class Members, the threat attacker would not have acquired their PII.

(b) If Defendant had removed from its network the PII of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, the threat attacker would not have acquired their PII.

(c) If Defendant had monitored in real time the movement of the PII of Plaintiff and Class Members from Defendant's network to the internet, the exfiltration of the PII could have been halted before its completion.

99.     Defendant's negligence was a legal cause of damage to Plaintiff and Class Members, even if it operated in combination with the acts of the threat attacker, because the acts of and the harmed caused by the threat attacker were reasonably foreseeable, and Defendant's negligence contributed substantially to producing such damage to Plaintiff and Class Members.

**Damages**

100.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, including unauthorized charges; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII, including the exposure of their PII on the dark web and the substantial risk of future harm; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of

the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the present and continuing risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in their continued possession; (viii) damages consisting of the cost of identity theft protection services for the remainder of the lives of Plaintiff and Class Members; and (ix) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

101.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risk of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

102.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are now at an increased risk of identity theft or fraud.

103.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

104.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-89 as if fully set forth herein.

22

105.    A relationship existed between Plaintiff and the Class members and Defendant in which Plaintiff and the Class members put their trust in Defendant to protect their private information and Defendant accepted that trust.

106.    Defendant breached the fiduciary duty that it owed to Plaintiff and the Class members by failing to protect Plaintiff's and the Class members' PII.

107.    Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class members.

108.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class members would not have occurred.

109.    Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class members.

110.    As a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, including unauthorized charges; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII, including the exposure of their PII on the dark web and the substantial risk of future harm; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the present and continuing risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate

and adequate measures to protect the current and former customers' PII in their continued possession; (viii) damages consisting of the cost of identity theft protection services for the remainder of the lives of Plaintiff and Class Members; and (ix) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

111.    Additionally, as a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will suffer the continued risk of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession.

112.    As a direct and proximate result of Defendant's breach, Plaintiff and Class Members are now at an increased risk of identity theft or fraud.

113.    As a direct and proximate result of Defendant's breach, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)   Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class members;

24

c) Injunctive relief, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order: (1) requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws; (2) requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members; (3) requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Member's personal identifying information; (4) prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database; (5) requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors; (6) requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring; (7) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; (8) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that

25

if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems; (9) requiring Defendant to conduct regular database scanning and securing checks; (10) requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members; (11) requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (12) requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information; (13) requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated; (14) requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; (15) requiring Defendant to implement logging and monitoring

26

programs sufficient to track traffic to and from Defendant's servers; and (16) for a period of 10 years, appointing a qualified and independent third party assessor to conduct attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

d)  For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

e)  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f)  For prejudgment interest on all amounts awarded; and

g)  Such other and further relief as this Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: May 1, 2024

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
*Counsel for Plaintiff*